UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:12-CV-282-F

SMITHFIELD BUSINESS PARK, LLC,    )
                      Plaintiff,   )
                                   )
        v.                         )
                                   )
SLR INTERNATIONAL CORP.,           )
                      Defendant.   )
_____  )         ORDER
                                   )
SLR INTERNATIONAL CORP.,           )
             Third-Party Plaintiff, )
                                   )
        v.                         )
                                   )
MASSOUD TABRIZI, INDUSTRIAL        )
REALTY GROUP, LLC, AND SESTECH     )
ENVIRONMENTAL, LP,                 )
             Third-Party Defendants. )

This matter is before the court on the following motions: third-party Defendant Massoud

Tabrizi's motion to dismiss [DE-70]; third-party Defendant Industrial Reality Group's motion to

dismiss [DE-105]; SLR's motion for leave to file second amended third-party complaint [DE-

122]; SLR's motion to strike Smithfield's summary judgment evidence [DE-99]; and

Smithfield's motion for leave to supplement its response in opposition to SLR's motion for

summary judgment [DE-121]. For the following reasons, Tabrizi's motion to dismiss [DE-70] is

ALLOWED in part and DENIED in part and IRG's motion to dismiss [DE-105] is ALLOWED

in its entirety. All the third-party claims in this case are DISMISSED except the contribution

claim against Tabrizi. All the counterclaims against Smithfield are also DISMISSED except the

unjust enrichment and breach of contract claims against Smithfield. The motion for leave to file second amended third-party complaint [DE-122] is DENIED. SLR's motion to strike Smithfield's summary judgment evidence [DE-99] is DENIED. Smithfield's motion for leave to supplement its response to SLR's motion for summary judgment [DE-121] is DENIED. The motion for summary judgment and the motion to strike expert testimony [DE-74, -75] are HELD IN ABEYANCE pending counsel's response as described below.

## I. FACTUAL BACKGROUND

Smithfield Business Park ("Smithfield") initiated this breach of contract suit against SLR in May, 2012. After approximately a year of discovery and multiple extensions of discovery deadlines, SLR filed a motion for leave to file a third-party complaint, which the court allowed. The third-party complaint asserts a variety of fraud and indemnification claims against Massoud Tabrizi ("Tabrizi"), Sestech Environmental ("Sestech"), and Industrial Realty Group ("IRG").

All of these claims relate to an environmental remediation project at a commercial real estate development owned and operated by Smithfield. The development is located, unsurprisingly, in Smithfield, N.C. In the course of various industrial operations at the site, the groundwater became contaminated. Smithfield originally contracted with Sestech, an environmental remediation company, to complete the remediation for an agreed-upon price of $950,000. The parties expressly agreed that the $950,000 price was "fixed" and Sestech would be responsible for any additional costs associated with the project. *See* Addendum to Sestech Contract [DE-88-3] at 66.

The Sestech contract also included a provision in which Sestech agreed to obtain a "No Further Action Letter" from the North Carolina Department of Environment and Natural

2

Resources (NCDENR). The NCDENR issues a No Further Action Letter when a party successfully completes a voluntary environmental remediation project. Receipt of the letter indicates that the property owner may resume unrestricted use of the property. The site is also placed in "no further action" status in the state's hazardous sites inventory. *See No Further Action*, NCDENR, http://portal.ncdenr.org/web/wm/sf/ihs/ra/nfa (last visited July 26, 2014).

Third-party Defendant Massoud Tabrizi ("Tabrizi") was employed at Sestech at the time it negotiated the contract with Smithfield. Tabrizi served as the "Registered Site Manager" (a position required by NCDENR) on the Smithfield project. With Tabrizi as manager, Sestech worked on the Smithfield project for more than two years and Smithfield paid Sestech approximately \$665,000 out of the total \$950,000 contract price. However, prior to completion of the project, TABRIZI left Sestech and joined Defendant SLR in a management capacity.

When Tabrizi left Sestech for SLR, Sestech stopped the remediation work on the property. Smithfield contacted Tabrizi about the project, and Tabrizi suggested that SLR could complete the project for the remainder of the contract price. Smithfield agreed and entered into an "Assumpsit Agreement" [DE-74-1] with SLR. Although the precise scope of the assumpsit agreement appears to be in dispute, the basic agreement was that SLR would complete the remediation project for the remainder of the contract price, approximately \$285,000.

After a variety of delays, it appears Tabrizi and SLR resumed work on the Smithfield project in June, 2009. While the remediation work was ongoing at the site in the Spring of 2010, Tabrizi left SLR and joined third-party Defendant Industrial Realty Group. However, Tabrizi continued to serve as the registered site manager on the Smithfield project throughout 2010 and the remediation work continued.

3

At some point in 2011, SLR and Tabrizi discontinued the remediation work at the Smithfield property and a dispute arose between SLR and Smithfield regarding additional payment beyond the remaining $285,000 contract price. According to SLR, Smithfield owes it approximately $337,000 above the $285,000 contract price because SLR has completed remediation work on the property that extends beyond the scope of the assumpsit agreement. Smithfield, for its part, alleges SLR breached the contract by abandoning the project without obtaining the No Further Action letter and it brings claims for breach of contract, negligent misrepresentation, and professional negligence/malpractice against SLR. Smithfield estimates the cost of obtaining the No Further Action letter at this stage will be between $400,000 and $750,000.

With respect to the third-party claims, SLR alleges the third-party Defendants engaged in a broad civil conspiracy to defraud it into entering the assumpsit agreement with Smithfield. According to SLR, when Tabrizi discussed assuming the Sestech contract with SLR, he misrepresented the scope of the remediation work required to complete the Smithfield project. Tabrizi allegedly informed Smithfield that the work was limited to remediation services related to shallow water wells only, and that the project would take approximately six months. In fact, the project has taken approximately four years and has involved extensive deep water well remediation.

SLR also alleges that when Tabrizi joined SLR he immediately began communicating with third-parties about the prospect of starting or joining another environmental consulting venture. After working at SLR less than a year, Tabrizi joined IRG, leaving SLR without a registered site manager for the Smithfield property and thereby making it impossible for SLR to

4

complete the project.[1] SLR further alleges that Smithfield is a shell corporation controlled by IRG and that when Tabrizi joined IRG, he suggested to IRG that it refuse to pay SLR for work on the Smithfield project as well as other environmental projects.

Based on the foregoing, SLR alleges the following claims against Smithfield and all the third-party Defendants: fraud, constructive fraud, fraudulent inducement, civil conspiracy, and contribution. In addition, SLR brings contractual indemnity and breach of fiduciary duty claims against TABRIZI, a piercing the corporate veil claim against Smithfield/IRG, and quantum meruit/unjust enrichment and breach of contract counterclaims against Smithfield.[2]

## II. STANDARD OF REVIEW

The purpose of a motion to dismiss under Rule 12(b)(6) is to test the legal sufficiency of the complaint, not to resolve conflicts of fact or to decide the merits of the action. *Edwards v. City of Goldsboro*, 178 F.3d 231, 243-44 (4th Cir. 1999). While the court accepts the well-pleaded factual allegations as true, the "'[f]actual allegations must be enough to raise a right to relief above the speculative level' and the plaintiff must allege 'enough facts to state a claim to relief that is plausible on its face.'" *Wahi v. Charleston Area Med. Ctr., Inc.*, 562 F.3d 599, 615 n.26 (4th Cir. 2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the

---

[1] As noted above, Tabrizi continued working as the registered site manager for some period of time after he ended his employment at SLR. It is not entirely clear at this juncture why SLR, an environmental remediation consulting firm, could not have hired a new site manager to complete the work.

[2] Neither Smithfield nor SLR have filed dispositive motions related to SLR's breach of contract or unjust enrichment counterclaims and the time period for doing so has not expired. *See* Scheduling Order [DE-141] at 3. Accordingly, this order does not address these counterclaims.

5

reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The complaint must therefore contain factual allegations supporting each element of each claim alleged. *Chao v. Rivendell Woods, Inc.*, 415 F.3d 342, 348 (4th Cir. 2005). Furthermore, well-pleaded factual allegations do not include vague or conclusory allegations that the defendant acted with illegality. *Ashcroft*, 556 U.S. at 680; *Twombly*, 550 U.S. at 556-57. The court may consider "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice" when deciding a Rule 12(b)(6) motion. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

Rule 9(b) of the Federal Rules of Civil Procedure requires even greater specificity when a plaintiff asserts fraud claims. The Rule states, "in alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). The party "must, at a minimum, describe the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." *U.S. ex rel. Wilson v. Kellog Brown & Root, Inc.*, 525 F.3d 370, 379 (4th Cir. 2008) (citation omitted); *Majeed v. North Carolina*, 520 F. Supp. 2d 720, 724 (E.D.N.C. 2007). Thus, the plaintiff must plead the "who, what, when, where, and how of the alleged fraud" under Rule 9(b). *Wilson*, 525 F.3d at 379 (citation omitted). The policy reason for the heightened pleading requirement is four-fold: (1) to put a defendant on sufficient notice of the conduct complained of so that the defendant can properly formulate a defense; (2) to protect defendants from frivolous lawsuits; (3) to eliminate complaints for fraud "in which all the facts are learned after discovery," and (4) to protect defendants from unfounded harm to their goodwill and reputation." *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir. 1999) (citation omitted)

6

## III. TABRIZI'S MOTION TO DISMISS

### A. Contractual Indemnity

SLR seeks contractual indemnity from Tabrizi in the event it is found liable to

Smithfield.[3] The employment agreement between SLR and Tabrizi contains the following

indemnity provision:

> By signing below, you agree to indemnify, hold harmless, and defend SLR, its
> owners, officers, directors, employees, and agents (collectively, the "Indemnities"),
> from and against any and all liabilities, penalties, fines, forfeitures, fees, demands,
> claims, causes of action, suits, judgments, and costs and expenses incidental thereto,
> including attorneys' fees, which any or all of the Indemnities may hereafter suffer,
> incur, be responsible for, or pay out, to the extent caused by, or arising from or in
> connection with your prior employment, affiliation, and/or ownership interest in
> SESTECH Environmental or any of its affiliates or subsidiaries.

SLR Employment Agreement [DE-55-1] at 2. The contract requires application of Washington

law. *Id.* Under Washington law, contract provisions indemnifying the indemnitee from losses

caused by his own acts are not favored and must be clearly drawn and strictly construed.

*Snohomish Cnty. Pub. Transp. Benefit Area Corp. v. Firstgroup Am., Inc.*, 271 P.3d 850, 853

(Wash. 2012) (en banc).

As explained above, Smithfield brings claims for breach of contract, professional

negligence, and negligent misrepresentation against SLR related to SLR's alleged failure to

complete the Smithfield project. Importantly, all of Smithfield's claims relate to events that

occurred after SLR assumed the contract. While it is true that Tabrizi was the site manager for

the Smithfield project while he was employed at Sestech and he encouraged SLR to assume the

---

[3] As explained below, because discovery has just recently ended and additional dispositive
motions may be filed, the court is holding SLR's motion for summary judgment in abeyance for the time
being. Thus, the court takes no position at this time as to SLR's ultimate liability (if any) to Smithfield
and nothing in this order should be construed as suggesting otherwise.

contract, SLR, not Sestech, is the entity that allegedly breached the contract. SLR seems to assume that because Tabrizi encouraged SLR to assume the contract with Smithfield, the indemnity provision requires that Tabrizi indemnify SLR for all claims in connection with the contract, regardless of which entity (SLR or Sestech) actually committed the wrongful acts. Such a broad interpretation is inconsistent with Washington law, which requires that these provisions be strictly construed. *Id.* SLR's interpretation is also contrary to the express terms of the indemnity provision itself, which contemplates indemnification for liabilities "caused by, arising from, or in connection with" Tabrizi's employment with Sestech, not SLR. SLR Employment Agreement [DE-55-1] at 2. Because Smithfield's claims all relate to SLR's own performance on the contract, SLR's potential liability to Smithfield has nothing to do with Tabrizi's employment at Sestech. Accordingly, the court finds Smithfield's claims do not fall within the scope of the indemnity provision and the contractual indemnity claim is therefore DISMISSED.

## B. Fraud Claims[4]

SLR also alleges Tabrizi is liable for North Carolina common law fraud and fraudulent inducement. In support of these claims, SLR alleges: (1) that Tabrizi made false representations

---

[4] The fraud claims are contained in two sections of the third-party complaint [DE-55]: sections "VI" and "VII." Section VI contains the header "Fraud against all third-party Defendants/Counter-Defendant." The court construes this as a claim for North Carolina common law fraud. The header to section VII is "Fraud, Constructive Fraud, and/or Fraudulent Inducement against third-party Defendants/Counter-Defendant. In future cases, counsel needs to separate each claim for relief into different sections. For purposes of ruling on this motion, the court construes this claim solely as one for fraudulent inducement. Because the common law fraud claim has already been pled, the claim for "fraud" in this section is superfluous. In paragraph 33 under section VII, SLR states, "SLR . . . alleges . . . that [the third-party Defendants/Counter-Defendant]'s actions constituted fraudulent inducement . . . ." Am.Third-Party Compl. [DE-55] ¶ 33. Nothing in paragraph 33 or in any other part of the complaint mentions "constructive fraud," let alone attempts to show how the factual allegations make out a claim for constructive fraud. Therefore, SLR's constructive fraud claim is DISMISSED as to all the third-party/counter Defendants.

8

or concealed material facts related to the scope of the Smithfield project when he encouraged SLR to assume the contract and (2) that Tabrizi's misrepresentations induced SLR to assume the Smithfield contract.[5] In North Carolina, a fraud claim requires a "(1) false representation or concealment of a material fact, (2) reasonably calculated to deceive, (3) made with intent to deceive, (4) which does in fact deceive, and (5) resulting in damage to the injured party." *Forbis v. Neal*, 361 N.C. 519, 526-27, 649 S.E.2d 382, 387 (2007) (citation omitted). In addition to these general elements, fraud by omission requires allegations demonstrating a relationship or situation giving rise to the duty to speak, the event or events triggering the duty to speak, what the defendant gained by withholding the information, and why the plaintiff's reliance on the omission was both reasonable and detrimental. *Breeden v. Richmond Comty. Coll.*, 171 F.R.D. 189, 194-95 (1997); *Griffin v. Wheeler-Leonard & Co.*, 290 N.C. 185, 198, 225 S.E.2d 557, 565 (1976). Conversely, fraud claims based on false representations require that the plaintiff allege that he was denied the opportunity to investigate or that he could not have learned the true facts by the exercise of due diligence. *Hudson-Cole Dev. Corp. v. Beemer*, 132 N.C. App. 341, 346, 511 S.E.2d 309, 312-13 (1999). As noted above, fraud must be pled with particularity and include allegations regarding the time, place, and contents of the false representations (or omissions), as well as the identity of the person making the misrepresentation and what he obtained thereby. *Wilson*, 525 F.3d at 379.

SLR's allegations fail to meet these standards. The allegedly false representations are twofold: (1) Tabrizi informed SLR the project was limited to remediating the shallow ground

---

[5] In light of the discussion below and the overlapping factual allegations supporting these claims, the court does not separately discuss each claim. Both claims are dismissed for the reasons stated below.

9

water wells when in fact it included deep water wells and (2) that the project would take six months to complete when in fact he knew it would be considerably longer. As Tabrizi notes, the allegations do not specify the time or place of the misrepresentations/omissions. Simply stating the misrepresentations occurred sometime between October 2008 and February 2009 is not sufficiently specific to plead fraud. *See Coley v. North Carolina Nat'l Bank*, 41 N.C. App. 121, 125-26, 254 S.E.2d 217, 219-20 (1979) ("It is not sufficient to conclusorily allege that a [defendant] made fraudulent misrepresentations; the pleader in such a situation must *allege specifically* . . . the time the alleged misstatements were made, and the place or occasion at which they were made.") (emphasis added).

More significantly, the complaint fails to allege either reasonable reliance (in the case of a fraudulent omission) or that SLR could not have learned the true facts by the exercise of due diligence (in the case of a misrepresentation). *See Breeden*, 171 F.R.D. at 194-95; *Beemer*, 132 N.C. App. at 346, 511 S.E.2d at 312-13. According to SLR's own third-party complaint, it is an environmental consulting company in the business of providing environmental remediation services. Am. Third-Party Compl. [DE-55] ¶ 13. Given the nature of SLR's business, it is difficult to comprehend why it would have assumed an environmental remediation project based solely on the representations made to it by a new employee. And this is especially true in these circumstances, where the contract called for a defined payment of approximately $285,000 and any work beyond that amount must be borne by SLR. Although the court recognizes that reliance is generally a factual question for the jury, *see Metro. Grp. Inc. v. Meridian Indus. Inc.*, No. 3:09-CV-440, 2010 WL 5056771, at *3 (W.D.N.C. 2010), the complaint still must provide enough factual support for this element of the claim. *See Walters v. McMahen*, 684 F.3d 435,

10

439 (4th Cir. 2012) ("To satisfy [the *Twombly*] standard, a plaintiff need not forecast evidence sufficient to prove the elements of the claim. However, the complaint must allege sufficient facts to establish those elements.") (citations omitted); *Beemer*, 132 N.C. App. at 346, 511 S.E.2d at 312-13 (explaining, in the case of an alleged fraudulent misrepresentation, due diligence must be sufficiently alleged to survive a motion to dismiss). SLR alleges that it "relied upon [Tabrizi's] representations in agreeing to perform remediation services related to the Project." Am. Third-Party Compl. [DE-55] ¶ 17. But there are no allegations regarding how this reliance was reasonable or that SLR could not have discovered the falsity of the representations through the exercise of due diligence. Because SLR fails to allege factual support for these elements of fraud, these claims are dismissed as to Tabrizi.

To summarize, SLR fails to sufficiently allege a number of the required elements of its fraud claims. SLR does not sufficiently allege the time or place of the misrepresentations, or how its reliance on the misrepresentation was reasonable under the circumstances. Accordingly, the fraud claims are DISMISSED.[6]

## C. Breach of Fiduciary Duty

A breach of fiduciary duty claim requires the existence of a fiduciary relationship between the parties. *Austin Maint. & Constr. Inc. v. Crowder Constr. Co.*, __ N.C. App. __, 742 S.E.2d 535, 541 (2012). A fiduciary relationship exists where:

> there has been a special confidence reposed in one who in equity and good conscience is bound to act in good faith and with due regard to the interests of the one reposing confidence . . . and in which there is confidence reposed on one side, and resulting domination and influence on the other.

---

[6] The court addresses SLR's request to amend the complaint below.

11

*Id.* (quoting *Dalton v. Camp*, 353 N.C. 647, 651, 548 S.E.2d 704, 707-08 (2001)). The relationship of employer/employee is generally not considered a fiduciary relationship. *Dalton*, 353 N.C. at 651, 548 S.E.2d at 708; *Reichhold Chems. Inc. v. Goel*, 146 N.C. App. 137, 155, 555 S.E.2d 281, 292 (2001). This is so even where the employee has managerial or supervisory responsibilities. *Dalton*, 353 N.C. App. at 651-52, 548 S.E.2d at 708 ("No evidence suggests that [the defendant's managerial] position in the workplace resulted in 'domination and influence on the other,' an essential component of any fiduciary relationship. [The defendant] was hired as an at-will employee to manage the production of a publication. . . . [H]is responsibilities were not unlike those of employees in other businesses and can hardly be construed as uniquely positioning him to exercise dominion over [his employer].").

SLR alleges that it was "subjugated to Tabrizi's influence and domination" because its ability to complete the Smithfield project was dependent on Tabrizi remaining in his position as the registered site manager. Am. Third-Party Compl. [DE-55] ¶ 35. While the court understands that Tabrizi informed SLR that he would continue as registered site manager for the Smithfield project and that Tabrizi possessed the specialized training and experience necessary for the site manager position, that does not mean SLR was "subjugated to Tabrizi's influence and domination." It strains credulity that SLR, an environmental consulting company, could not have simply hired a new site manager for the Smithfield project when Tabrizi left. If the court were to accept SLR's argument that Tabrizi exercised "influence and domination" over SLR because he was the site manager, every registered site manager on an environmental remediation project would have a fiduciary duty to his employer to complete the project. That is not the law. *See*

*Dalton*, 353 N.C. App. at 651-52, 548 S.E.2d at 708. Thus, the breach of fiduciary duty claim against Tabrizi is DISMISSED.

## D. Civil Conspiracy

The elements of civil conspiracy include: "(1) an agreement between two or more individuals; (2) to do an unlawful act or to do [a] lawful act in an unlawful way; (3) resulting in injury to plaintiff inflicted by one or more of the conspirators; and (4) pursuant to a common scheme." *Privette v. Univ. of North Carolina*, 96 N.C. App. 124, 139, 385 S.E.2d 185, 193 (1989). "Naked claims" of conspiracy, unaccompanied by properly alleged claims of underlying wrongdoing, are subject to dismissal. *See Reid v. Holden*, 242 N.C. 408, 414-15, 88 S.E.2d 125, 130 (1955); *Suntrust Mortg., Inc. v. Busby*, 651 F. Supp. 2d 472, 488 (W.D.N.C. 2009); *Precision Components, Inc. v. C.W. Bearing USA, Inc.*, 630 F. Supp. 2d 635, 645 (W.D.N.C. 2008).

SLR's civil conspiracy claim consists of the following allegation:

> . . . Third-Party Defendants/Counter-Defendant entered into an agreement, to fraudulently induce SLR to assume the Sestech Agreement, which resulted in the damages of which Smithfield and SLR now complain. Third-Party Defendants/Counter-Defendant did so pursuant to a common scheme to induce SLR into assuming liabilities beyond the represented scope of work on the Project.

Am. Third-Party Compl. [DE-55] ¶ 37. As this pleading makes clear, SLR's civil conspiracy claim is predicated on SLR's fraud claims. Because SLR has failed to sufficiently allege the fraud claims, SLR's civil conspiracy claim is also DISMISSED. *See Busby*, 651 F. Supp. 2d at 488; *Precision Components*, 630 F. Supp. 2d at 645.

13

## E. Contribution

Under North Carolina law, "the right to either indemnity or contribution is predicated on the parties being joint tortfeasors." *Bowman v. Alan Vester Ford Lincoln Mercury*, 151 N.C. App. 603, 608, 566 S.E.2d 818, 822 (2002). This requires factual allegations showing that Tabrizi was a joint tortfeasor with SLR with respect to Smithfield's claims for professional negligence and negligent misrepresentation.[7] Although the court agrees with Tabrizi that the factual allegations regarding this claim are somewhat nebulous, the court has decided to allow this claim to proceed as to Tabrizi. SLR does allege that Tabrizi "abruptly left SLR . . . leaving SLR without a [registered site manager] to complete the Services contemplated under the Sestech Agreement." Am. Third-Party Compl. [DE-55] ¶ 21. It is at least plausible that abruptly leaving an environmental remediation project without arranging for a transitional site manager may constitute professional negligence in the environmental remediation profession. At least, Tabrizi does not point to any case law or other authorities suggesting it is not. Moreover, the complaint also specifically alleges that Tabrizi represented to SLR that the project would only take six months and would be limited to shallow well remediation. Because neither party explains why these allegations would not support a claim for negligent misrepresentation under North Carolina law, the court has decided to allow the contribution claim to proceed as to Tabrizi.

In sum, Tabrizi's motion to dismiss is ALLOWED in part and DENIED in part. It is allowed as to SLR's claims for contractual indemnity, all of the fraud claims, breach of fiduciary duty, and civil conspiracy. It is denied as to SLR's contribution claim.

---

[7] Contribution is not available on Smithfield's breach of contract claim because that is not a tort claim. As explained above, contractual indemnity is also not available to SLR.

14

## IV. IRG's MOTION TO DISMISS

IRG also moves to dismiss SLR's third-party claims. Because the factual allegations related to many of SLR's claims against IRG are the same as the allegations supporting the claims against Tabrizi, the court will deal with some of these claims in rather summary fashion. To the extent the factual allegations underpinning the claims are different or the claims themselves are different, the court addresses the claims in detail.

### A. Fraud Claims

As noted above with respect to the fraud claims asserted against Tabrizi, SLR "must, at a minimum, describe the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." *Wilson*, 525 F.3d at 379 (citation omitted); *Majeed*, 520 F. Supp. 2d at 724. Thus, the plaintiff must plead the "who, what, when, where, and how of the alleged fraud" under Rule 9(b). *Wilson*, 525 F.3d at 379 (citation omitted).

As with the claims against Tabrizi, SLR's allegations against IRG fail to meet these requirements. In addition to the same deficiencies the court discussed above, SLR's allegations against IRG fail to identify which individuals at IRG made the misrepresentations/omissions. This must be alleged under North Carolina law. *Coley*, 41 N.C. App. at 125-26, 254 S.E.2d at 220 ("It would be manifestly unfair to require a corporation to attempt to defend an action for fraud without being informed as to which of its officers, agents, or employees purportedly made the misrepresentations, as well as to all of the facts and circumstances surrounding the transaction. Because no such facts are alleged in the plaintiffs' complaint, it was properly

15

dismissed for failure to state a claim upon which relief may be granted."). For this reason, and the reasons explained in section III.B above, the fraud claims against IRG are DISMISSED.

## B. Civil Conspiracy

This claim is DISMISSED for the reasons stated in section III.D above.

## C. Alter Ego/Piercing the Corporate Veil

SLR alleges that Smithfield is merely an "alter-ego" or instrumentality of IRG and, consequently, IRG should be liable for Smithfield's misconduct.[8] "[W]here one entity is the alter-ego, or mere instrumentality, of another entity, shareholder, or officer, the corporate veil may be pierced to treat the two entities as one and the same, so that one cannot hide behind the other to avoid liability." *Strategic Outsourcing, Inc. v. Stacks*, 176 N.C. App. 247, 254, 625 S.E.2d 800, 804 (2006). North Carolina courts require three elements to pierce the corporate veil: (1) complete domination of one entity over another with respect to the transaction at issue; (2) "use of this control to commit a wrong, or to violate a statutory or other duty in contravention of the other party's rights"; and (3) "this wrong or breach of duty must be the proximate cause of the injury to the other party." *State ex rel. Cooper v. Ridgeway Brands Mfg., LLC*, 362 N.C. 431, 441, 666 S.E.2d 107, 114 (2008). Courts also look to the following factors in examining the level of domination and control: inadequate capitalization, noncompliance with corporate formalities, and excessive fragmentation of a single enterprise. *E. Mkt. St. Square v. Tycorp Pizza IV, Inc.*, 175 N.C. App. 628, 636, 625 S.E.2d 191, 198 (2006).

---

[8] As noted, SLR alleges fraud, civil conspiracy, breach of contract, and unjust enrichment counterclaims against Smithfield.

16

SLR's factual allegations fail to state a piercing the corporate veil claim under *Twombly* and *Iqbal*. SLR's allegations are that two of Smithfield's corporate officers are corporate officers at IRG, these corporate officers negotiated and signed the original Sestech agreement and the assumpsit agreement, and all correspondence related to the assumpsit agreement was sent to IRG's corporate address. *See* Am. Third-Party Compl. [DE-55] ¶¶ 11-12, 15, 39. While these allegations may suggest some overlap between the entities, they do not plausibly allege domination and control. There are no allegations of inadequate capitalization, noncompliance with corporate formalities or commingling of funds, or any other factual allegations that plausibly suggest domination and control. The fact that the two corporations have some of the same corporate officers does not indicate that IRG controls Smithfield.

Moreover, as with the civil conspiracy claim, North Carolina does not recognize a stand alone claim of piercing the corporate veil. *Green v. Freeman*, __ N.C. __, 749 S.E.2d 262, 271 (2013) ("[To proceed with a piercing the corporate veil claim,] "[t]here must also be an underlying legal claim to which liability may attach."). Because all of SLR's claims against IRG are dismissed, there is no underlying legal claim to support piercing the corporate veil in this case.

## D. Contribution

As noted, under North Carolina law, "the right to either indemnity or contribution is predicated on the parties being joint tortfeasors." *Bowman*, 151 N.C. App. at 608, 566 S.E.2d at 822. This claim is therefore dependent on SLR and IRG being joint tortfeasors with respect to the professional negligence and negligent misrepresentation claims Smithfield asserts against SLR. There are simply no allegations in the complaint plausibly suggesting that IRG acted in

17

concert with SLR to commit these torts against Smithfield. Indeed, the allegations suggest precisely the opposite: that IRG acted in concert with Smithfield to defraud SLR. The contribution claim against IRG is also DISMISSED.

In summary, all of the claims against IRG fail to state a claim upon which relief can be granted and they are all DISMISSED. IRG's motion to dismiss [DE-105] is ALLOWED in its entirety.

## V. THIRD-PARTY/COUNTERCLAIMS AGAINST SESTECH AND SMITHFIELD

It appears that Sestech has failed to answer the third-party complaint. However, because the factual allegations underpinning all of the claims against Sestech are the same as the factual allegations underlying the claims against Tabrizi and IRG, the court dismisses all of the claims against Sestech for the reasons explained above.[9] *See Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001) (explaining defendant who defaults is deemed to have admitted the factual allegations in the complaint but not the conclusions of law and "[t]he court must . . . determine whether the well-pleaded allegations . . . support the relief sought . . . .").

With respect to the counterclaims against Smithfield, the fraud and civil conspiracy claims are based on the same factual allegations underpinning the claims against Tabrizi and IRG and those claims are also DISMISSED for the reasons stated above. SLR's unjust enrichment/quantum meruit claim against Smithfield, which has not been the subject of any dispositive motion briefing at this stage, may proceed. In addition, although not included in the third-party complaint, it appears SLR has also asserted a breach of contract counterclaim against

---

[9] With respect to the contribution claim, the court dismisses that claim as to Sestech for the same reason it dismissed the claim as to IRG. *See* Section IV.D.

18

Smithfield and Smithfield has filed a responsive pleading. *See* Counterclaim [DE-25]; Replies to Counterclaim [DE-26, -39]. Thus, SLR's breach of contract and unjust enrichment counterclaims remain active claims in this case.

## VI. SLR'S MOTION TO AMEND

SLR has also filed a motion to amend the third-party complaint [DE-122]. Rule 15(a) of the Federal Rules of Civil Procedure governs amendments to the pleadings.[10] Under the Rule, "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). District courts should liberally allow amendments:

> If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits. In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be "freely given."

*Foman v. Davis*, 371 U.S. 178, 182 (1962). However, leave to amend is "not to be granted automatically," *Deasy v. Hill*, 833 F.2d 38, 40 (4th Cir. 1987), and a district court has discretion to deny amendment so long as the court does not "outright refuse 'to grant the leave without any justifying reason.'" *Equal Rights Ctr. v. Niles Bolton Assocs.*, 602 F.3d 597, 603 (4th Cir. 2010) (quoting *Foman*, 371 U.S. at 182).

SLR's motion seeks to add one factual allegation to the complaint: "[d]uring the time SLR was performing the Services [with respect to the Smithfield project] IRG took the position

---

[10] It appears Rule 16(b) also applies to this motion because SLR requested leave to amend the pleading after the deadlines set forth in the scheduling order expired. Because the court finds the amendment futile under Rule 15, the court does not address Rule 16(b).

that it was not going to pay SLR. Specifically, IRG refused to pay for the plugging and abandonment of the wells and never allocated any funds for these Services." Proposed Second Am. Third-Party Compl. [DE-122-1] ¶ 20. This single factual allegation does not change the analysis above, and all of the claims against IRG remain subject to dismissal even if this amendment were allowed. Thus, the amendment is futile. *See, e.g.*, *Perkins v. United States*, 55 F.3d 910, 917 (4th Cir. 1995) (explaining amendment is futile if, assuming amendment is allowed, complaint will still not survive a motion to dismiss). For example, with respect to the fraud claims, this allegation does not identify who within IRG made the misrepresentations or allege that SLR could not have discovered the truth behind the alleged misrepresentations through the exercise of due diligence. As explained above, these elements must be alleged to successfully plead fraud. *Beemer*, 132 N.C. App. at 346, 511 S.E.2d at 312-13; *Coley*, 41 N.C. App. at 125-26, 254 S.E.2d at 220. Accordingly, SLR's motion amend [DE-122] is DENIED.

SLR has also not demonstrated that further leave to amend should be allowed. After SLR filed its third-party complaint, it had approximately five months of discovery to develop further factual support for its claims. Additionally, SLR was on notice of the third-party complaint's pleading deficiencies during this time because Tabrizi filed his motion to dismiss within approximately two months of SLR filing the third-party complaint. Despite the additional discovery and notice of the third-party complaint's deficiencies, SLR's proposed amended complaint contains one additional factual allegation that fails to address any of the problems with the complaint. Under these circumstances, it appears allowing further amendment would be both unduly prejudicial to the third-party Defendants and, given SLR's inability to correct the deficiencies, futile. *See Foman*, 371 U.S. at 182 (explaining leave to amend should be denied if

amendment would be unduly prejudicial or futile). Thus, dismissal of SLR's claims is with prejudice. *See Feeley v. Total Realty Mgmt.*, 660 F. Supp. 2d 700, 715-16 (E.D. Va. 2009) ("Given the multiple attempts that Plaintiffs have had to sufficiently set forth their allegations in three tries, this Court is of the opinion that further leave to amend is futile, and therefore the dismissal is with prejudice.").

## VII.  SMITHFIELD V. SLR

A number of motions also remain pending related to the primary dispute between Smithfield and SLR. These include: (1) SLR's motion for summary judgment [DE-74]; (2) SLR's motion to exclude Smithfield's expert's testimony under *Daubert* [DE-75]; (3) SLR's motion to strike Smithfield's summary judgment evidence [DE-99]; and (4) Smithfield's motion to supplement its response to SLR's motion for summary judgment [DE-121].

The current scheduling order in this case, which the court has explained applies to both SLR and Smithfield as well as the third-party Defendants, indicates that all dispositive motions must be filed by August 8, 2014. April 4, 2014 Order [DE-141] at 2-3. Although SLR has already filed its motion for summary judgment [DE-74], the court recognizes the parties may have anticipated filing new summary judgment motions in response to the April 4 order. The court, of course, has no way of knowing whether these potential new motions for summary judgment will have any impact on the analysis of the already-filed motion for summary judgment [DE-74] and therefore whether it should refrain from ruling on that motion. Accordingly, on or before **August 4, 2014**, each party shall file a notice indicating whether (1) it anticipates filing another motion for summary judgment which will include additional arguments and/or cite to additional evidence with regard to the damages issue raised in SLR's motion [DE-74], or (2)

21

state other additional reason why the court should refrain from ruling on the current motion for summary judgment. The court will HOLD IN ABEYANCE the motion for summary judgment [DE-74] and the motion to exclude Smithfield's opinion witness testimony [DE-75] pending the parties' responses to this order. The motion to exclude Dr. Dorband's testimony has been fully briefed and the court sees no reason to allow any supplementary briefing on that motion at the present time. However, because the issues raised in the motion to exclude are intertwined with the motion for summary judgment and the court is deferring ruling on that motion, the most equitable course is to also hold in abeyance consideration of the motion to exclude the opinion testimony pending the parties' responses.

However, the court will rule on SLR's motion to strike Smithfield's summary judgment evidence [DE-99] and Smithfield's motion to supplement its response to SLR's motion for summary judgment [DE-121]. SLR's motion to strike Smithfield's summary judgment evidence [DE-99] is predicated on Smithfield's failure to submit an affidavit accompanying its expert report in its response to SLR's motion for summary judgment. While it is well settled that unsworn expert reports are not admissible summary judgment evidence, *see, e.g.*, *Harris v. J.B. Robinson Jewelers*, 627 F.3d 235, 239 n.1 (6th Cir. 2010) (citation omitted); *Edens v. Kennedy*, 112 F. App'x 870, 877 (4th Cir. 2004); *Carr v. Tatangelo*, 338 F.3d 1259, 1273 n. 26 (11th Cir. 2003), the court has broad discretion to permit supplementation of the summary judgment record, including curative affidavits. *DG&G, Inc. v. FlexSol Packaging Corp.*, 576 F.3d 820, 826 (8th Cir. 2009); *Capobianco v. City of New York*, 422 F.3d 47, 55 (2d Cir. 2005).

Here, Smithfield has submitted a curative affidavit in which Dr. Dorband swears to the contents of the report, rendering it proper summary judgment evidence. Aff. Wayne Dorband

22

[DE-112-4]. Moreover, Smithfield provided the report to SLR before Dr. Dorband's deposition and SLR amply examined Dr. Dorband regarding the report at the deposition. In these circumstances, SLR can hardly argue that it will be prejudiced by allowing Smithfield to rely on the report in response to SLR's motion for summary judgment.[11] In the interests of justice, the court will allow the curative affidavit. Accordingly, SLR's motion to strike Smithfield's summary judgment evidence is DENIED, and the court will consider the report at docket entry 88-2 when it decides the summary judgment motion.[12]

Smithfield also moves to supplement its response to SLR's motion for summary judgment [DE-121]. The primary evidence Smithfield seeks to produce is a new affidavit from Dr. Dorband in which he provides an estimate of the damages Smithfield has incurred as a result of SLR's alleged breach of contract. However, as SLR notes, Dr. Dorband has already provided testimony at his deposition regarding damages and Dr. Dorband may not submit a subsequent affidavit in an attempt to clarify matters he addressed in his deposition. *See Barwick v. Celotex Corp.*, 736 F.2d 946, 960 (4th Cir. 1984). Accordingly, the motion is DENIED with prejudice with respect to Dr. Dorband's affidavit [DE-121-1].[13]

_____

[11] Of course, the court takes no position regarding SLR's arguments that the report is not sufficient evidence of damages in light of Dr. Dorband's deposition testimony or that the report and Dr. Dorband's testimony should be excluded under *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993). As explained above, the court is reserving ruling on the issues presented in the summary judgment briefing and SLR's *Daubert* motion pending the parties' responses to this order. The parties should not construe anything in this order as representing the court's opinions on either of those motions.

[12] Although it is not entirely clear, it appears Dr. Dorband may have offered some additional opinions in the report attached to his affidavit at docket entry 112-4. To the extent the reports may be different, the court's ruling regarding Dr. Dorband's curative affidavit applies solely to the report at docket entry 88-2, which is the report provided to SLR prior to Dr. Dorband's deposition.

[13] The court acknowledges Smithfield's argument that Dr. Dorband provided sufficient evidence of damages at his deposition/in his initial report. As explained, the court takes no position on this [cont.]

23

With respect to the additional documentary evidence addressed in this motion, Smithfield indicates it intends to file these materials under seal. However, Smithfield appears to have simply sent the documents to chambers for review. This is not how to file documents under seal in this district; the documents must be actually filed in the CM/ECF system in accordance with the court's local rules and Fourth Circuit precedent. *See, e.g., Doe v. Public Citizen*, 749 F.3d 246 (4th Cir. 2014); *In re The Knight Publ'g Co.*, 743 F.2d 231 (4th Cir. 1984); Local Civ. R. 79.2. Moreover, counsel submitted over 100 pages of documents to chambers and the accompanying motion [DE-121] fails to cite to any of the relevant page numbers or describe, except in the most general terms, how these documents support Smithfield's arguments. Accordingly, with respect to the documentary evidence, the motion is DENIED without prejudice to renew. If counsel chooses to renew this motion, he must correct the deficiencies described above. SLR will of course be allowed to respond to any renewed motion.

## VIII. CONCLUSION

To summarize, Tabrizi's motion to dismiss [DE-70] is ALLOWED in part and DENIED in part and IRG's motion to dismiss [DE-105] is ALLOWED in its entirety. All the third-party claims in this case are DISMISSED except the contribution claim against Tabrizi. All the counterclaims against Smithfield are also DISMISSED except the unjust enrichment and breach of contract claims against Smithfield. The motion for leave to file second amended third-party complaint [DE-122] is DENIED. SLR's motion to strike Smithfield's summary judgment evidence [DE-99] is DENIED. Smithfield's motion for leave to supplement its response to SLR's motion for summary judgment [DE-121] is DENIED with prejudice as to the Dorband

---

issue at the present time.

affidavit and without prejudice as to the documentary evidence. The motion for summary judgment and the motion to strike expert testimony [DE-74, -75] are HELD IN ABEYANCE pending counsel's response as explained above.

SO ORDERED.

This the **2 9** day of July, 2014.

James C. Fox
JAMES C. FOX
Senior United States District Judge